UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-85 (JRT/BRT)

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

STEVEN RICHARD SMASAL,

                Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Laura M. Provinzino, Assistant United States Attorney, hereby provides this response to Steven Richard Smasal's pretrial discovery motions.

## I.    Defendant's Motion To Retain Rough Notes and Evidence [Docket No. 21]

The United States does not object to requiring that law enforcement officials involved in the investigation of this case retain and preserve their rough notes and evidence seized.   However, the United States objects to any order concerning the disclosure of rough notes.

Rough notes are not considered statements within the meaning of the Jencks Act, 18 U.S.C. § 3500.   *See United States v. Redding*, 16 F.3d 298, 301 (8th Cir. 1994) (concluding that rough notes are not a statement of witness as there was no evidence witness signed, adopted, or approved of notes); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (defendant not entitled to discover government agents' general notes

from witness interviews). Nor are agent rough notes generally discoverable as a "statement" of the agent. *See, e.g.*, *United States v. Simtab*, 901 F.2d 799, 808-09 (9th Cir. 1990); *United States v. Williams*, 875 F.2d 846, 853 (11th Cir. 1989).

## II.     Defendant's Motion for Disclosure of Rule 404 Evidence [Docket No. 22]

The government is aware of its disclosure obligations under Rule 404 and already has complied and intends to continue to comply fully with those obligations.   The government proposes to notify the defense of Rule 404(b) evidence it intends to use and the witnesses through whom such evidence would be presented at trial fourteen days before trial—not the thirty days requested by the defendant.   The government requests that any order be strictly drawn to require no more than what is encompassed by Rule 404(b).   *See, e.g.*, *United States v. Adediran*, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence).   At this time the government is aware of, and has disclosed, evidence of defendant's prior law enforcement contacts in Wisconsin and the Philippines related to a sexual interest in children along with the NCMEC tips from Facebook of child pornography associated with the defendant's accounts.

## III.    Defendant's Motion for Early Disclosure of Jencks Act Material [Docket No. 23]

The United States objects to this motion.   It has been repeatedly and consistently held in this Circuit and District, however, that the United States may not be required to make pretrial disclosure of Jencks material.   *Finn v. United States*, 919 F. Supp. 1305, 1315 (D. Minn. 1995); *see also United States v. Ben M. Hogan Co.,* 769 F.2d 1293, 1300

(8th Cir. 1985); United States v. White, 750 F.2d 726 (8th Cir. 1984).  Accordingly, the United States objects to any court-ordered disclosure of such statements prior to the witnesses' testimony.[1]

## IV.    Defendant's Motion To Compel **Brady** and **Giglio** Evidence [Docket No. 24]

The government understands its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny.  The government has complied with, and will continue to comply with, those obligations, including the production of two disks of materials on April 1, 2015.  The materials including reports, interviews of defendant, travel documents, materials from the review of the defendant's cell phone, and other items.  The government has also extended an offer to defendant's counsel to review any evidence, including child pornography images and videos.

The government objects to defendant's motion to the extent that it goes beyond the requirements of *Brady*, *Giglio*, and their progeny.  Specifically, the government is not aware of any (1) identification of anyone other than defendant, (2) failure to identify the defendant by any eyewitness, and (3) statement of anyone exculpating the defendant. The government has disclosed (4) all statements regarding the instant offense and (5) all reports of such statements.  The government is not aware of (6) any specified evidence not identified with defendant or (7) any items seized from others.  The government will provide (8) information about any prior convictions of prospective government witnesses when they are disclosed prior to trial.  At this time there is no (9) cooperation agreement

---

[1] It is the undersigned's practice to agree with the defense counsel to produce reciprocal Jencks disclosures three business days before trial and would intend to follow that practice in this case.

with any prospective government witness.  Such an agreement, and any offers, benefits, or promises would be disclosed prior to trial.  The government is not aware of (10) any videotape and audiotape of events charged in the indictment.

**V.      Defendant's Motion To Suppress Search and Seizure [Docket Nos. 25 & 27]**

Smasal's digital media was searched at the Los Angeles International Airport on October 3, 2014, and at the Minneapolis/St. Paul International Airport on February 24, 2015.  The searches are valid pursuant to routine border search authority.  As *United States v. Cotterman*, 709 F.3d 952, 960 (9th Cir. 2013) (en banc), affirmed "the legitimacy of the initial search of [defendant]'s electronic devices at the border is not in doubt," noting that it has "approved a quick look and unintrusive search of laptops" at the border.  Smasal relies solely on *Cotterman*, which has not been adopted by the Eighth Circuit.  Smasal's rights were not violated, and no evidence should be suppressed.  Even if this Court were to find that reasonable suspicion was needed, that was present for both searches.

**A.      Smasal's Electronic Media Was Properly Searched Pursuant to the Government's Border Search Authority.**

The Fourth Amendment provides that searches of persons and property without a search warrant are generally unreasonable, unless a recognized exception to the warrant requirement applies.  One recognized exception is the government's right to conduct suspicionless searches of individuals and property at our international border.

It is a fundamental principle that "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border.

'[S]earches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'" *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)); *see also United States v. Hassanshahi*, 2014 WL 6735479, *11 (D.D.C. Dec. 1, 2014).  Furthermore, there is no doubt that the United States has a strong interest in protecting its borders by ensuing that contraband—for example, undeclared currency, weapons, or child pornography—does not leave the country illegal.  "Because searches at the international border of both inbound and outbound persons or property are conducted 'pursuant to the longstanding right of the sovereign to protect itself,' they generally require neither a warrant nor individualized suspicion.'" *United States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008) (quoting *Ramsey*, 431 U.S. at 616).

The searches of defendant Smasal's laptops and cell phone were conducted pursuant to the border search authority outlined above and did not require any level of suspicion or a search warrant.  Officials with Homeland Security encountered Smasal when he was ready to depart from Minnesota to Taiwan via Toronto, Canada and when Smasal entered the United States in Los Angeles.

There is no question that federal agents can search property such as cars, letters, and other containers at the border.  *See, e.g.*, *United States v. Boumelhem*, 339 F.3d 414, 423 (6th Cir. 2003) (large cargo container properly searched before leaving the United States pursuant to border search authority codified at 19 U.S.C. § 1581 because "the United States' interest in preventing the export of weapons to other countries also

implicates the sovereign's interest in protecting itself."). The detention of Smasal's laptops and cell phone was justified under this same border search authority. A laptop is an item of personal property and therefore subject to being searched—just as any other piece of personal property could be searched at the border. Electronic media are property included within the definition of cargo under Section 1581. "To hold otherwise would undermine the long-standing practice of seizing goods at the border even when the type of good is not specified in the statute." *United States v. Ickes*, 393 F.3d 501, 504 (4th Cir. 2005); *see also United States v. Stewart*, 729 F.3d 517, 524-26 (6th Cir. 2013) (border search of laptop computers was proper).

## B.   Although Not Required, Reasonable Suspicion Clearly Justified the Searches of Smasal's Laptops and Cell Phone

By his citation to *Cotterman*, Smasal must be arguing in favor of imposing the requirement of reasonable suspicion to justify the search. That requirement is inconsistent with the law and should be rejected here. Even if it were to be applied, there was more than reasonable suspicion to justify the searches.

The Supreme Court has required a showing of reasonable suspicion in one limited and extreme circumstance: the border search of a woman who was suspected of smuggling drugs in her alimentary canal. In that case, *United States v. Montoya de Hernandez*, 473 U.S. 531 (1985), the defendant was detained for 16 hours to allow for her bowels to move to see if she was concealing narcotics. The Court ruled that although "[r]outine searches of persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant," *id.* at 538, given the length of

detention in this case, and the "uncomfortable" and "humiliating" ordeal the defendant endured, *id.* at 544, a reasonable suspicion standard would be applied to justify such a border search and detention.  Only border searches that are highly intrusive of individuals or that are destructive or particularly offensive need be supported by reasonable suspicion.  *See Flores-Montano*, 541 U.S. at 152; *Cotterman*, 709 F.3d at 973 (Callahan, J., concurring in part, dissenting in part, and concurring in judgment); *United States v. Arnold*, 533 F.3d 1003, 1009 (9th Cir. 2008).  None of those factors apply to the searches of Smasal's laptops or cell phone.

As explained in *House v. Napolitano*, 2012 WL 1038816, *7 (D. Mass. 2012), when a laptop was seized at the border and detained for 49 days:

> [A] search of a laptop computer or other electronic devices does not involve the same 'dignity and privacy interests' as the 'highly intrusive searches of the person' found to require some level of suspicion such as strip searches or body cavity searches. *Flores-Montano*, 541 U.S. at 152.  The Supreme Court has not explicitly held that all property searches are routine or that such searches are categorically incapable of implicating the 'dignity and privacy interests of the person being searched,' *id.*, but the search of one's personal information on a laptop computer, a container that stores information, even personal information, does not invade one's dignity and privacy in the same way as an involuntary x-ray, body cavity or strip search of person's body or the type of search that have been held to be non-routine and require the government to assert some level of suspicion.

Similarly, Judge Callahan said in her *Cotterman* concurrence: "papers, even private ones in electronic format, are not a 'person.'" 709 F.3d at 973.  "[I]n the unique context of border searches, property is property and we may not chip away at the government's

authority to search it by adopting a sliding sale of intrusiveness. It's the border, not the technology, that 'matters.'" *Id.* at 976.

The fact that the border search of a laptop should be treated like border searches of other containers or property is further supported by *Ickes*. In that case, the defendant was crossing the Canadian border into the United States when his van was searched. The search included a search of his computer and disks, which were found to contain child pornography. The Court ruled that the computer should be considered like other "cargo" that was subject to search at the border. *Ickes*, 393 F.3d at 504.

Here, the instant searches should not be considered "forensic" as identified by the *Cotterman* court. Instead, HSI submitted the laptops and cell phone for forensic imaging. That process makes an exact physical copy of the hard drive or other media; the image captures all of the data on the hard drive or other media to preserve the contents of the device in the same state as it was when it crossed the border throughout the performance of the border search, without the data being viewed and without changing the data in any way. The subsequent search only accessed data which the agents—or Smasal himself— could have accessed manually. To characterize the mere "imaging" of a device as a "forensic search" within the meaning of *Cotterman* would deprive the government of its ability to expeditiously return electronic media to international passengers while briefly detaining electronic media images.

Whether this Court chooses to follow Judge Contreras' approach in *Hassanshahi*, or in the alternative, believes that the search was indeed forensic, and applies the Ninth Circuit reasonable suspicion standard, the result would be the same. Reasonable

suspicion existed to detain Smasal's laptops and cell phone in Los Angeles and Minneapolis/St. Paul to submit them for forensic review.

As explained in *Hassanshahi*, 2014 WL 6735479, at *12, reasonable suspicion exists when an agent has specific and articulable facts which indicate criminal activity may be occurring. The totality of the circumstances must be considered, along with the reasonable inferences drawn from them. Reasonable suspicion does not rule out the possibility of innocence. *Id.* "Reasonable suspicion sets a 'low threshold,' . . . and requires only a 'minimal level of objective justification.'" *Id.* at *16. Here, Homeland Security Investigations had reasonable suspicion of contraband based on reports to NCMEC from Facebook that Smasal had child pornography images associated with his Facebook accounts. These reports related to Smasal's possession of such contraband in the Philippines prior to his return to the United States. And, in fact, child pornography was found on the search of Smasal's laptop at the Los Angeles airport. In addition, Facebook had reported that Smasal had registered approximately five Facebook accounts, including four registered with "fake" names, and then he used those accounts to entice children under the age of 18 years old to produce child pornography and to engage in sexually explicit chats with minors, including Smasal's inquiries into prices of sexual services, requests for nude pictures, and inquiries into where Smasal could meet the minors. Facebook also provided a specific tip that Smasal was using throw-away cell phones and messaging young girls to meet him at the Gaisano Fiesta Mall in the Philippines. That information was relayed to Homeland Security Investigations in Minneapolis/St. Paul in advance of Smasal's outbound travel. While it is possible that

Smasal was travelling for legitimate personal or professional reasons—e.g., to teach English in China—his travel must be considered in context given the finding of child pornography when Smasal had last returned to the United States less than six months earlier.

Although the United States need not demonstrate reasonable suspicion in order for this Court to deny Smasal's motions to suppress, the rational inferences drawn from the NCMEC tips and Smasal's past activity provided reasonable suspicion for conducting the border searches of Smasal's digital media—both in Los Angeles and Minneapolis/St. Paul.

Were Smasal's arguments to prevail, an exception would be created requiring heightened suspicion for travelers carrying more information than other travelers—for example, on a laptop rather than on a suitcase—or for someone with more technical expertise.  Allowing forensic examinations of laptops to be conducted without a reasonable suspicion requirement will allow the nation to protect its borders more efficiently.  Certainly, the United States has a strong interest in disrupting and detecting crimes that are committed with computers, whether those computers are entering or leaving the country.  *Cf. Boumelhem*, 339 F.3d at 423 ("[T]he United States' interest in preventing the export of weapons to other countries also implicates the sovereign's interest in protecting itself.").

At the same time, an individual's expectation of privacy in his or her laptop computer will not be unduly compromised because "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior."

*Montoya de Hernandez*, 473 U.S. at 538.   Thus, Smasal has not and cannot provide any basis to suppress evidence, if any, obtained from searches at the Los Angeles and Minneapolis/St. Paul airports.   If Smasal persists in his motions, the United States would be prepared to call witness to establish how the digital media was searched and, if necessary, the reasonable suspicion to justify such a search.   As a result, his suppression motions must be denied.

## VI.   Defendant's Motion To Suppress Statements [Docket Nos. 26 & 28]

Pending international travel on February 24, 2015, Smasal made incriminating statements during a post-*Mirandized* conversation with officers from Homeland Security Investigations.   Smasal appears to be challenging whether he made the statements knowingly and voluntarily.   Smasal cites no legal authority in his motion.   The challenge is not valid.   Smasal's statements should not be suppressed.

*Miranda* warnings given to defendants make them aware of their rights to counsel, thereby fulfilling the "knowing" requirement, regardless of when those warnings are given in the course of an investigation. *Patterson v. Illinois*, 487 U.S. 288, 292, 298-99 (1985).   *Miranda* warnings that inform a defendant that his statements can be used against him in subsequent criminal proceedings effectively inform a defendant of the benefits of invoking his right to counsel. *Id.* at 294. When a defendant makes voluntary statements to law enforcement after being informed of his rights under *Miranda*, he has waived his right to counsel and his statements should not be suppressed. *See id.* at 300. Just after his baggage examination, Special Agent Jared Drengson and Special Agent Jesse Tabolich of Homeland Security Investigations read Smasal his *Miranda* rights

during Smasal's non-custodial interview, and, upon voluntarily continuing to answer their questions, Smasal waived his right to counsel.

Smasal did not ask for a lawyer at any time during the interview. At no time did he ask that the interview be terminated. At no time did Smasal invoke his right to remain silent. Moreover, no threats or promises were made to Smasal. Smasal's statements were knowing and voluntary—provided after he was advised of his rights. *See United States v. Fellers*, 397 F.3d 1090, 1095 (8th Cir. 2005) ("Because *Miranda* warnings give the suspect the information he needs to choose whether to exercise his right to remain silent, the suspect's choice to speak after receiving *Miranda* warnings is normally viewed as an 'act of free will.'").

Smasal's waiver of rights under *Miranda* was voluntary, knowing, and intelligent. First, the waiver was the product of a free and voluntary choice rather than intimidation, coercion, or deception. *See United States v. Gayekpar*, 678 F.3d 629, 638 (8th Cir. 2012) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, Smasal waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* This two-dimension inquiry is made based on a totality of the circumstances.

Whether a confession is voluntary must be judged by the totality of the circumstances. *Mincey v. Arizona*, 437 U.S. 385, 401; *United States v. Estey*, 595 F.3d 836, 839 (8th Cir. 2010). As such, the totality of the circumstances analysis includes an evaluation of law enforcement's conduct and its impact on the defendant's capacity to resist any pressure, looking at factors such as the length of detention, the nature of the

questioning, and the accused's age and educational background.  *See Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001) (finding confession voluntary after evaluating totality of circumstances surrounding the interrogation).  Here, there can be no valid claim that the inculpatory statements of Smasal were anything other than voluntary.

There is no evidence (and no specific allegation in Smasal's motion) that the interviewing agents intimated, coerced, or threatened Smasal during the interview. Smasal was advised that anything he said could be used against him in court.  Smasal, fully aware of the consequences of any statements he may make, clearly wanted to talk.

The Eighth Circuit has held that statements which came about, much like here, after defendant acknowledged that he understood his rights, were voluntary, knowing, and intelligent and, thus, appropriately were not suppressed.  If Smasal persists in his motion, the United States will be prepared to call either Special Agent Drengson or Tabolich to testify to the circumstances surrounding Smasal's waiver of *Miranda* and the resulting voluntary interview.  As such, there is no basis to suppress the statement.[2]

## VII.    Defendant's Motion for Discovery [Docket No. 30]

The United States timely made disclosures to defendant on April 1, 2015.  This included one disk of documents and one disk of the forensic review of a cellular telephone.  The government also disclosed its willingness, pursuant to the conditions set forth in 18 U.S.C. § 3509(m), to accommodate any request to view the physical evidence, including images and videos of sexually-explicit conduct involving child victims.  (To

---

[2] The United States is not intending to rely on Smasal's statements to Homeland Security Investigations in Los Angeles (Docket No. 28) for the instant offense.

date, counsel has not made such a request.)   Therefore, the United States has already

complied with Rule 16(a)(1)(A)-(F) and has even made discovery not required by law.

The United States objects to any discovery order that exceeds the requirements of Rule

16.   Rule 16 is the only vehicle for discovery in a criminal case; there is no general

constitutional right to discovery.  *See United States v. Bursey*, 429 U.S. 545, 559 (1977).

That said, the government is aware of its ongoing duty to disclose under Rule 16 and will,

of course, comply with that duty.[3]

Dated: May 1, 2015

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*s/ Laura M. Provinzino*
BY:  LAURA M. PROVINZINO
Assistant United States Attorney
Attorney ID No. 0329691

---

[3] The United States obtained and has served several search warrants for the content of email and Facebook accounts associated with the defendant.  The returns will be made available to the defendant for review upon receipt at the defendant's request.